# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

LACKIE DRUG STORE, INC., on
Behalf of Itself and Arkansans
Similarly Situated

      Plaintiffs,

v.

EXPRESS SCRIPTS; ESI MAIL
ORDER PROCESSING, INC.; ESI MAIL
PHARMACY SERVICE, INC; and
EXPRESS SCRIPTS PHARMACY, INC.

      Defendants.

Case No. 4:23-CV-01669-SEP

**CLASS ACTION**

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND STRIKE PLAINTIFFS' CLASS ALLEGATIONS

---

Scott Poynter, AR Bar. 09077
scott@poynterlawgroup.com
**POYNTER LAW GROUP, PLLC**
4924 Kavanaugh Blvd.
Little Rock, AR 72207
(501) 812-3943

Jason D. Sapp, #5851MO
jason@sapplawllc.com
**SAPP LAW LLC**
75 W. Lockwood, Suite 222
Webster Groves, MO 63119
(314) 782-3500

*Plaintiffs' Counsel (Additional Counsel Listed on Signature Page)*

Plaintiff Lackie Drug Store, Inc. ("Lackie" or "Plaintiff"), on behalf of itself and Arkansans similarly situated (together, "Plaintiffs"), respectfully file this Response in Opposition to the Express Scripts[1] Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint and Strike Plaintiffs' Class Allegations. Doc. 23.

## FACTUAL SUMMARY

Lackie is an independent retail pharmacy—independent from PBM affiliate pharmacies—operating in Lonoke, Arkansas. Compl. (Doc. 1) ¶ 1. Express Scripts is one of the largest Pharmacy Benefit Managers (PBM) in the United States and is based in St. Louis County, Missouri. *Id.* ¶ 2. Lackie filed the instant lawsuit to pursue its statutory right to challenge Express Scripts' Maximum Allowable Cost (MAC) List and appeal Express Scripts' stonewalling or out-right denial of Lackie's appeals of Express Scripts' MAC List reimbursements. *Id.* ¶¶ 18–24, 40–43.

Express Scripts omits from its brief necessary background facts for the Court to understand the underlying issues. In response to abusive prescription drug reimbursement practices by PBMs, the Arkansas General Assembly passed Act 900 of 2015.[2] Act 900 sought to curb the PBMs' abusive practices by regulating the rates at which PBMs reimburse pharmacies for drugs and giving pharmacies a right to appeal a PBM's reimbursement rate. *See generally* Ark. Code Ann. ¶ 17-92-507. Unhappy with the new oversight and regulation, the Pharmaceutical Care Management Association—a national

---

[1] The term "Express Scripts" refers to, collectively, Express Scripts, ESI Mail Order Processing, Inc., ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc.

[2] Act 900 of 2015 is codified as Ark. Code Ann. § 17-92-507, and this brief refers to both Act 900 and its codified version.

trade association representing the largest PBMs in the country—filed a lawsuit challenging the law. *See Pharm. Care Mgmt. Ass'n v. Rutledge*, 240 F.Supp.3d 951, 956–57 (E.D. Ark. 2017). The United States Supreme Court sided with Arkansas and held that Act 900 did not conflict with federal law. *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83 (2020).

This lawsuit's first iteration was filed in Lonoke County Circuit Court in November 2020.[3] Over a month later, Express Scripts removed the lawsuit to the U.S. District Court for the Eastern District of Arkansas.[4] Shortly after, Lackie amended its complaint to add class allegations on behalf of other independent pharmacies in Arkansas that were—and still are—victims of Express Scripts' unlawful reimbursement practices. After an unsuccessful settlement conference, the Arkansas federal court severed Lackie's claims against Express Scripts and transferred them to this Court under the PPA's[5] forum selection clause. Just over a month after transfer to this Court, Lackie voluntarily dismissed the case to attempt resolution again.[6] The following December, Lackie filed the instant complaint, which is the subject of the pending motion to dismiss.

Lackie's claims against Express Scripts are simple but important. Ark. Code. Ann. § 17-92-507(c)(1)–(4) requires Express Scripts to (1) provide its MAC List to independent pharmacies like Lackie, (2) update the MAC List on a timely basis, (3) provide each

---

[3] Lonoke County Circuit Court, Case No. 43-CV-20-752.

[4] Eastern District of Arkansas, Case No. 4:20-cv-01515-JM.

[5] Defendants seek to enforce their pharmacy provider agreement (or "PPA"), which they filed under seal on February 26, 2024. *See* Ex. A (PPA) to Defs.' Mot. to Dismiss (Doc. 23-2). Citations to the PPA will be "PPA § ____."

[6] Docs. 116 and 117, *Lackie v. Express Scripts*, E.D. Mo., Case No. 4:22-cv-01163-RLW.

pharmacy prompt updates to the MAC List, and (4) provide a reasonable administrative appeal process for pharmacies challenging MAC reimbursements. Compl. (Doc. 1) ¶ 17. Section 17-92-507(d)(1) prohibits Express Scripts from reimbursing independent pharmacies like Lackie at a rate lower than Express Scripts reimburses its affiliate pharmacies. *Id.* ¶ 26. Yet, to Lackie's and the Class's detriment, Express Scripts has refused to comply with these simple and unambiguous statutory requirements.

Instead of following Arkansas law, Express Scripts has created and perpetuated an illegal reimbursement regime. First, Express Scripts refuses to provide Lackie and the Class access to the MAC List. *Id.* ¶ 20. Second, Express Scripts refuses to timely update its MAC List. *Id.* ¶ 21. Third, when Express Scripts updates its MAC List, Express Scripts nevertheless refuses to promptly notify Lackie and the Class about these updates. *Id.* ¶ 22. Fourth, Express Scripts refuses to provide a reasonable administrative appeal process for Lackie and the Class to have a good-faith opportunity to challenge Express Scripts' MAC List reimbursements. *Id.* ¶ 23. Finally, Express Scripts unlawfully reimburses its affiliate pharmacy defendants at a higher rate than it reimburses independent pharmacies like Lackie. *Id.* ¶ 26.

Express Scripts' failure to comply with Arkansas law is not just procedural error. It has resulted in real, cognizable injury to Lackie and the Class. Express Scripts unilaterally sets the MAC List's reimbursement value. *Id.* ¶ 15. As a matter of practice, Express Scripts routinely sets its MAC List reimbursement rates below plan, network, and average wholesale prices, as well as below the National Average Drug Acquisition Cost and Wholesale Acquisition Cost. *Id.* ¶ 16. Then, when Lackie and the Class members

try to appeal Express Scripts' reimbursements using Express Scripts' internal appeal process, Lackie must navigate an onerous and unlawful regime that exists solely to frustrate the pharmacies and discourage them from appealing Express Scripts' MAC List reimbursements. *Id.* ¶¶ 23–26. Instead of properly correcting inaccurate reimbursements, Express Scripts requires Lackie and the Class to reverse and rebill their submissions, only to have Express Scripts deny the reimbursement again for the same reasons. *Id.* ¶ 23. This causes the pharmacies to spend additional time and incur additional expenses to rectify Express Scripts' improper and inaccurate reimbursements and bear the risk of changing copays or deductibles. *Id.* The effect of Express Scripts' unlawful appeal process is to frustrate pharmacies and discourage them from challenging MAC List reimbursements. *Id.* ¶¶ 23–26.

## **LEGAL STANDARDS**

Express Scripts challenges the complaint's legal sufficiency under Federal Rule of Civil Procedure 12(b)(6). For the complaint to survive, it must allege facts supporting the claims' elements. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must allege more than threadbare recitals and conclusory statements, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); however, the Court assumes all factual allegations to be true and construes all reasonable inferences in the nonmoving party's favor. *See Neitzke v. Williams*, 490 U.S. 319, 338 (1989).

Express Scripts also moves to strike Plaintiffs' class allegations under Fed. R. Civ. Pro. 12(f). The Court may only strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). While

4

the Court enjoys liberal discretion to strike a party's pleading, it is an extreme measure that is disfavored and infrequently granted. *Stanbury L. Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000). Further, courts are "hesitant" to strike class allegations before discovery, even when a court has "serious doubts" about class viability. *See Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021); *see also Barker v. Nestle Purina PetCare Co.*, 601 F.Supp.3d 464, 473–74 (E.D. Mo. 2022).

**LEGAL ARGUMENT**

**I.      EXPRESS SCRIPTS' MOTION TO DISMISS FAILS**

Express Scripts' motion to dismiss fails under its 12(b)(6) theory because Lackie states claims against all Defendants[7] under applicable Arkansas law.

**A. Defendants' Violations of A.C.A. § 17-92-507 Are Violations of the ADTPA.**

Arkansas law provides a "violation of [A.C.A. § 17-92-507] is a deceptive and unconscionable trade practice under the [Arkansas] Deceptive Trade Practices Act." Ark. Code Ann. § 17-92-507(g)(1). The complaint alleges Express Scripts and its affiliates:

- Failed to provide Plaintiff and the Class access to its MAC List (violating A.C.A. § 17-92-507(a)(1)(A), (b), and (c)(1));
- Failed to timely update its MAC List (violating A.C.A. § 17-92-507(C)(2));
- Failed to timely provide Plaintiff and the Class prompt notification of updates to its MAC List (violating A.C.A. § 17-92-507(c)(3));
- Failed to provide a reasonable administrative appeal procedure to allow Plaintiff and the Class to challenge MAC reimbursements (violating A.C.A. § 17-92-507(a)(4)(A)(i));

---

[7] Express Scripts moves to dismiss the non-PBM Express Scripts entities alleging Lackie asserts no claims against them. As explained throughout this brief, Plaintiff does assert claims against the non-PBM entities. Also, because the defendants are all Express Scripts entities, they are sufficiently on notice according to the complaint's facts as to which entities are liable for which facts.

5

- Reimbursed Plaintiff and the Class less than it reimbursed the Express Scripts Affiliates for the same pharmacist services (violating A.C.A. § 17-92-507(d)(1)); and,
- Reimbursed Plaintiff and the Class less than the national average drug acquisition cost (violating A.C.A. § 23-92-506(b)(5)(A)).

These facts allege *per se* violations of section 17-92-507 and are, by definition, deceptive and unconscionable. The Court need not look further.

Express Scripts tries to create this additional "consumer-oriented conduct" element in the ADTPA to circumvent Section 507(g)(1) and the Legislature's clear intent. Arkansas federal courts have already addressed this argument and applied Arkansas law as written. Indeed, in the Eastern District of Arkansas Express Scripts joined other PBM defendants in making this same but unsuccessful argument. The Eastern District of Arkansas ruled "Arkansas law already declares that violating Section 17-92-507 … is a deceptive and unconscionable trade practice as a matter of law." *Lackie Drug Store, Inc. v. Arkansas CVS Pharmacy, LLC*, No. 4:20-cv-01515-JM, 2022 WL 16635130, *4–5 (E.D. Ark. Nov. 2, 2022) (citing *Allcare Specialty Pharmacy, LLC v. OptumRX, Inc.*, 2017 WL 5571356, *5 (E.D. Ark. Apr. 6, 2017).[8]

**B. The Arkansas Unfair Practices Act Does Not Require "competing sellers."**

Express Scripts again attempts to circumvent the textual commands of Arkansas law. The Arkansas Unfair Practice Act (AUPA) exists "to safeguard the public against the

---

[8] Even though "consumer-oriented conduct" is not required under Ark. Code. Ann. § 17-92-507, it is also found here due to the negative impact on patient care. In *Baptist Health v. Murphy*, 373 S.W.3d 269 (2010), the Arkansas Supreme Court found "consumer-oriented conduct" where cardiologists alleged patient care was negatively impacted by defendant's violations of the ADTPA. See also *Southeastern Emergency Physicians LLC v. Arkansas Health & Wellness Plan, Inc.*, 2019 WL 13193960, *13-14 (E.D. Ark., Dec. 9, 2019).

creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented." Ark. Code Ann. § 4-75-202.

The AUPA also specifically prohibits:

> The secret payment or allowance of rebates, refunds, commissions, or unearned discounts is an unfair trade practice, whether in the form of money or otherwise or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions to the injury of a competitor and where the payment or allowance tends to destroy competition. [Ark. Code Ann. § 4-75-208(a)].

As the Eastern District of Arkansas held when the same argument was made there, Lackie alleges facts squarely within the AUPA's parameters—namely, that Express Scripts unlawfully denies Lackie access to the MAC List and provides more favorable rates to Express Scripts' affiliate pharmacies. Compl. (Doc. 1) ¶¶ 19, 20, 25, 26. This practically removes Lackie from the marketplace. *Id.* ¶ 25. These allegations satisfy the AUPA's pleading requirement. *See Lackie Drug Store, Inc.*, 2022 WL 16635130 at *5.[9]

### C. Lackie's Claims for Injunctive and Declaratory Relief Survive.

Under the Arkansas Declaratory Judgment Act, Lackie is entitled to both injunctive and declaratory relief. Ark. Code Ann. § 16-111-101 *et seq.* As the Eastern

---

[9] Even if a competing-seller relationship is required, which it is not, such a relationship exists between Lackie and Express Scripts. The complaint alleges Lackie sells pharmaceutical drugs without its legal entitlement to the MAC list, and Express Scripts' affiliate pharmacies are reimbursed at a more favorable rate than Lackie and the Class. Compl. (Doc. 1) ¶¶ 19, 20, 25, 26. The affiliate pharmacies are, like Lackie, pharmaceutical drug sellers and create the "competing sellers" standard that Express Scripts advocates for. *See* Compl. (Doc. 1) ¶¶ 29, 30. By favorably reimbursing its own affiliate pharmacies, Express Scripts is perpetuating a monopoly through unfair and discriminatory practices, thereby destroying fair and honest competition. *See* Ark. Code Ann. §§ 4-75-207(a); 4-75-208(a).

District of Arkansas previously ruled as to another PBM, and within the motion joined

by Express Scripts:

> The Declaratory Judgment Act is remedial, and its purpose is to afford relief from uncertainty and insecurity by declaring "rights, status, and other legal relationships whether or not further relief is or could be claimed." *Hardy v. United Servs. Auto. Ass'n*, 233 S.W.3d 165, 167 (Ark. App. 2006) Ark. Code Ann. §§ 16–111–102 and 103. The act is to be liberally construed and administered. Ark. Code Ann. § 16–111–102(c). In addition, when declaratory relief is sought, "all persons shall be made parties who have or claim any interest that would be affected by the declaration." Ark. Code Ann. § 16–111–106(a).

> Lackie has stated a justiciable controversy against OptumRx under the ADTPA and the UPA. The interests of Lackie and OptumRx appear to be adverse. Lackie's interest in the controversy appears to be legally protectable. OptumRx has failed to show that the declaratory relief sought is not ripe for judicial review. This claim for declaratory judgment will be allowed to proceed. While it may be duplicative of Lackie's ADTPA and UPA claims, that is an insufficient reason alone to dismiss it. *Bradley v. XTO Energy, Inc.*, No. 3:21-CV-00079-BSM, 2021 WL 3040758, at *3 (E.D. Ark. July 19, 2021) (citing *Collins v. SEECO, Inc.*, 2012 WL 2309080 at *2 (E.D. Ark. 2012) ("The request for a declaratory judgment is probably suspenders over the belt of the contract claim. But there is no harm in leaving this request for relief in.")).

> *Lackie Drug Store, Inc.*, 2022 WL 16635130, at *6.

Express Scripts also argues injunctive relief is a remedy, not a cause of action. Br.

in Supp. of Defs.' Mot. to Dismiss (Doc. 23.1) at 14. But this is the extent of Express Scripts'

argument on the issue. Lackie recognizes an injunction is a form of relief pursuant to Ark.

Code Ann. § 16-111-108; however, that does not mean dismissal is warranted. In Express

Scripts' lone case in support, the court dismissed the claim for injunctive relief because

the underlying federal claims were dismissed, and the court declined to exercise

supplemental jurisdiction over the remaining claims. *Wholesale All., LLC v. Express Scripts*,

*Inc.*, 366 F.Supp.3d 1069, 1081-82 (E.D. Mo. 2019). If the Court finds Lackie's claims survive dismissal, then Lackie's request for injunctive relief also survives, as the Eastern District of Arkansas previously held.

Express Scripts also moves to dismiss Lackie's claim for declaratory relief, arguing Ark. Code. Ann. § 17-92-507 does not create a private right of action. Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 23-1) at 14–15. Express Scripts is incorrect. Lackie does not find its cause of action in this section. Rather, the ADTPA and AUPA are Lackie's causes of action, and section 17-92-507 simply provides the legal definition for claims under the ADTPA and AUPA. Both the ADTPA and AUPA confer private rights of action. Ark. Code Ann. § 4-88-113(f); Ark. Code Ann. § 4-75-211(a).

**D. Unjust Enrichment May be Pled as an Alternative Theory of Relief.**

Plaintiffs recognize that they may not recover on both their statutory claims as well as for unjust enrichment. However, Express Scripts is not entitled to dismissal of the unjust enrichment claim simply because the statutory claims are also plead. Indeed, Plaintiffs are entitled to plead unjust enrichment in the alternative to their statutory claims. *U.S. v. Bame*, 721 F.3d 1025, 1031-32 (8th Cir. 2013).[10]

**II. EXPRESS SCRIPTS' MOTION TO STRIKE FAILS**

Lackie seeks class certification of the following Class, which Defendants move to strike:

> All pharmacy business entities that are citizens of Arkansas, that are operating within the State of Arkansas, and that have been subjected to Express Scripts' MAC List from November 16, 2020, and through

---

[10] With this filing, Plaintiffs are also filing a Notice of Voluntary Dismissal of Count V of the complaint for equitable estoppel.

certification of the Class pursuant to Federal Rule of Civil Procedure 23 and notification of the Class pursuant to Federal Rule of Civil Procedure 23 (c). [Compl. (Doc. 1) ¶ 27].

Striking a party's pleading is an extreme and disfavored measure. *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). When considering a contract's validity, federal courts must apply relevant state law. *See Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 872 (8th Cir. 2004). Lackie agrees that Missouri Law governs the PPA's validity. Here, the PPA's class waiver, which adopts Missouri law, is unconscionable.

There are two aspects of unconscionability—procedural and substantive. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858 (Mo. 2006). "Procedural unconscionability deals with the formalities of making the contract," and "[s]ubstantive unconscionability means an undue harshness in the contract terms." *Id.*

The Missouri Supreme Court held in *Eaton v. CMH Homes, Inc.*, "it is inaccurate to suggest that an agreement or provision must be separately found to be both procedurally and substantively unconscionable to be invalid." 461 S.W.3d 426, 432–33 (Mo. 2015).[11]

---

[11] The Eighth Circuit once explained that "Missouri law requires that for a contract to be voided [as unconscionable], it must be both procedurally and substantively unconscionable, although not necessarily in equal amounts." *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 857 (8th Cir. 2008). In making this assertion, the Eight Circuit relied on *Kansas City Urology, P.A. v. United Healthcare Services*, 261 S.W.3d 7, 14–15 (Mo. Ct. App. 2008). But a state's intermediate appellate court is not binding on a federal court—a federal court must only follow an intermediate appellate court's decision when that decision is the best evidence of that state's law. *Cincinnati Ins. Co. v. Jacob Rieger & Co., LLC*, 58 F.4th 386, 391 (8th Cir. 2023). Since the Eighth Circuit's decision in *Pleasants*, the Missouri Supreme Court clarified that a contract does *not* need to be both procedurally *and* substantively unconscionable before a court can find the agreement invalid. *Eaton*, 461 S.W.3d at 432–33. Thus, the holding in *Eaton* governs this Court's scope-of-unconscionability analysis, not the holding in *Pleasants* or *Kansas City Urology*.

Instead, a court should "look at both the procedural and substantive aspects of a contract to determine whether, considered together, they make the agreement or provision in question unconscionable." *Id.* at 433; *see also Leonard v. Delaware N. Companies Sport Serv., Inc.*, 861 F.3d 727, 729 (8th Cir. 2017). Regardless, Express Scripts' PPA is both procedurally and substantively unconscionable; thus, the class allegations should not be struck from the pleading.

**A. The PPA is Procedurally Unconscionable.**

Express Scripts' provider agreement is procedurally unconscionable. "Procedural unconscionability focuses on such things as high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process." *Schneider*, 194 S.W.3d at 858. Applying Missouri law, the Eighth Circuit has explained procedural unconscionability involves "the contract formation process, and focuses on high pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining position." *Pleasants*, 541 F.3d at 857-58 (quoting *Whitney v. Alltell Commc'n, Inc.*, 173 S.W.3d 300, 308 (Mo. Ct .App. 2005) (internal quotation marks omitted)).

Relevant here is the parties' unequal bargaining position. Express Scripts is one of the nation's largest PBMs. Compl. (Doc. 1) ¶ 2. To be paid for the drugs they dispense, independent pharmacies like Lackie must enter a contract with Express Scripts. *Id.* ¶ 10-15. And if there is no PPA contract—and therefore no relationship with a PBM—independent pharmacies cannot fill their customers' prescriptions. *Id.* ¶¶ 10–12. Because of this, pharmacies like Lackie operate at Express Scripts' will. If Express Scripts fails to

properly—or even completely—reimburse a pharmacy for the prescriptions it fills, the pharmacy loses time and money. *Id.* ¶¶ 23–26. Put simply, Lackie and the Class must have a PPA with Express Scripts if they want to stay in business.

Lackie recognizes that a contract is not unconscionable just because it is an adhesion contract or contains a class waiver. *See Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 489–90 (Mo. 2012). But a class waiver may still be unenforceable if the contract is altogether unconscionable. *Id*. at 492–96. In *Brewer*, the Missouri Supreme Court held that a contract was unconscionable—and its arbitration provision unenforceable—because, like here, the term was non-negotiable and not understood by an average person. *See id*. The *Brewer* court also held the contract was "extremely one-sided." *Id.* at 493. For example, parties had to bear their own costs, but the title company reserved the right to seek reimbursement for its attorney fees and costs incurred by defending a claim. *Id.* All in all, the court held "[t]he disparity in bargaining power, in addition to the disparity between Brewer's remedial options and the title company's remedial options, constitutes strong evidence that the agreement is unconscionable." *Id.* at 495. For the same reasons, Express Scripts' PPA is procedurally unconscionable.

Here, the PPA provides that Express Scripts may terminate the PPA without cause, so long as written notice is provided to the covered pharmacy at least thirty days before termination. PPA § 4.2.a. But the PPA does not provide the same right to pharmacies like Lackie. *See id.* In some instances, Express Scripts can immediately terminate the PPA without notice to the pharmacy. *Id.* § 4.2.c. But again, Lackie and like pharmacies have no such right under the PPA. *See id.* And if the PPA is terminated by Express Scripts, the

pharmacy remains on the hook to abide by the PPA's terms and conditions, if Express Scripts so demands. *Id.* § 4.2.h.2. Furthermore, if Lackie were to breach the PPA, the PPA grants more favorable remedies to Express Scripts. *See, e.g.,* §§ 5.4, 6.2, 7.1. The foregoing examples illustrate the unequal bargaining power Express Scripts has over Lackie and the Class.

## B. The PPA is Substantively Unconscionable.

A contract is substantively unconscionable when the contract's terms are unduly harsh. *Schneider*, 194 S.W.3d at 858. Because the purpose of the unconscionability defense is to protect parties from one-sided contracts, oppression, and unfair surprise, it makes sense for these concerns to be at the heart of an analysis of whether a contract is substantively unconscionable. *See Brewer*, 364 S.W.3d at 492-93. As the Missouri Supreme Court explained:

> Oppression and unfair surprise can occur during the bargaining process or may become evident later, when a dispute or other circumstances invoke the objectively unreasonable terms. In either case, the unconscionability is linked inextricably with the process of contract formation because it is at formation that a party is required to agree to the objectively unreasonable terms. [*Id.* at 493].

Important here is Express Scripts' invocation of objectively unreasonable terms— namely, the provision prohibiting class, collective, or otherwise coordinated actions. *See* Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 23-1) at 9–11.[12]

---

[12] Again, Lackie recognizes a class-waiver provision alone does not make a contract *per se* unconscionable. But, considering the totality of the circumstances, the PPA's class waiver is unconscionable and unenforceable.

Initially, much of the analysis of the PPA's procedural unconscionability is relevant to the Court's analysis of substantive unconscionability. Many of the same terms that revealed Express Scripts' unequal bargaining power over Lackie are also unduly harsh. With those already-discussed terms in mind, consider some others. For example, the PPA provides that Express Scripts "may amend *any* term, party or revision of this Agreement, including without limitation, any exhibits, requirements for participation, schedules, amendments, or addenda[,]" so long as Express Scripts gives Lackie ten days' notice. PPA § 7.4 (emphasis added). The PPA provides no corresponding right to amend the PPA to Lackie, and Express Scripts' discretionary—and perhaps arbitrary—changes become effective if Lackie fails to timely tender written objections to Express Scripts. *Id.*

Additionally, the PPA predetermines the relief available to Express Scripts if Lackie breaches the contract. *Id.* § 5.4, 7.1. For one, the PPA declares that Express Scripts is entitled to specific performance of the agreement—including relief via temporary restraining order or preliminary injunction. *Id.* But that's not all. The PPA also provides Express Scripts "*shall* be entitled to . . . a judgment for damages (including reasonable attorneys' fees and costs) caused by the breach . . . ." *Id.* (emphasis added). Again, the PPA affords no similar rights to Lackie. *See id.* This is hardly distinguishable from the one-sided benefits and disparity in remedial options that were fatal to the contract's validity in *Brewer*. *See* 364 S.W.3d at 493.

Furthermore, the inability to proceed as a class will inundate the Court with over a hundred lawsuits[13] dealing with the same factual and legal issues. Instead of efficiently resolving the similar claims against Express Scripts collectively, the Eastern District will be left to consider the same claims, issues, facts, and arguments repeatedly over one hundred times in separate cases. Other forums have already rejected the PBM industry's push for such inefficiency. *See* Ex. A, *Bulk Appeals and Invoice Costs in MAC Appeals,* Ark. Ins.Dep't Bulletin No. 5-2022, https://insurance.arkansas.gov/site/assets/files/2880/5-2022_mac.pdf, (March 9, 2022). Despite the PPA's consolidated claims prohibition, the Arkansas Insurance Department has allowed bulk appeals, i.e., consolidated claims, related to PBMs' MAC List reimbursement practices. *See id.* The Arkansas Insurance Department recognizes that consolidated appeals will "reduce burdensome, time consuming, and laborious requirements on pharmacies" that would otherwise be forced to appeal each PBM's decision individually. *Id.* The PPA's class waiver places the same burdensome requirements on this Court.

Moreover, forcing the Class to litigate each claim separately is unfairly burdensome and restricts Lackie's and the Class's remedial options. Federal courts across the country recognize that class actions are the superior way to litigate a case involving common questions of law and fact. *See, e.g., Norman v. Trans Union, LLC*, 479 F.Supp.3d 98, 138–39 (E.D. Pa. 2020). Class actions also help the judiciary efficiently and fairly administer justice. *See id.* But considering the PPA's context, the class waiver is an unduly

---

[13] Indeed, Plaintiffs' counsel has retainer agreements with about 130 independent pharmacy stores meeting the Class definition.

harsh term that limits Lackie's available relief, depletes both parties' resources, and strains the Court's resources.

Finally, when a contract unfairly limits a party's access to remedies, the contract can be found unconscionable under Missouri law. *See Brewer*, 364 S.W.3d at 493. This is true when the Court considers Express Scripts' superior bargaining position. *Supra,* pp. 12–13. Lackie and the Class had little to no option in agreeing to the PPA—they either agreed to it or they forewent their opportunity to operate a retail pharmacy. Compl. (Doc. 1) ¶¶ 23–26. And if a dispute arises between a pharmacy and Express Scripts, the PPA affords Express Scripts numerous remedial benefits and advantages while conveniently limiting those of the pharmacy. *See* PPA § 5.4, 7.1. Like Express Scripts' MAC List appeal process, the class waiver—and most likely the whole PPA—is designed solely to frustrate the judicial process and discourage would-be plaintiffs from vindicating their rights and seeking redress for their injuries. But regardless of the reasons why the PPA included a class waiver, when considering the totality of the PPA, the provision is unenforceable because the PPA is unconscionable.

<u>**CONCLUSION**</u>

WHEREFORE, Plaintiffs respectfully request the Court to deny Express Scripts Motion to Dismiss Plaintiffs' Class Action Complaint and Strike Plaintiffs' Class Allegations, Doc. 23**,** and provide all other just and appropriate relief.

Respectfully submitted,

**POYNTER LAW GROUP, PLLC**

*/s/ Scott Poynter*

Scott Poynter, AR Bar. 09077
scott@poynterlawgroup.com
4924 Kavanaugh Blvd.
Little Rock, AR 72207
(501) 812-3943

Jason D. Sapp, #5851MO
jason@sapplawllc.com
**SAPP LAW LLC**
75 W. Lockwood, Suite 222
Webster Groves, MO 63119
(314) 782-3500

James C. Wyly, AR Bar No. 90158
jwyly@wylyrommel.com
Sean F. Rommel, AR Bar No. 94158
srommel@wylyrommel.com
**WYLY-ROMMEL, PLLC**
4004 Texas Boulevard
Texarkana, TX 75503
(903) 334-8646

Michael Darren O'Quinn
**LAW OFFICES OF DARREN O'QUINN PLLC**
B. Ram Suri Professional Building
36 Rahling Circle, Suite 4
Little Rock, AR 72223
(501) 817-3124
darren@darrenoquinn.com

Rodney P. Moore (96134)
rpmoore@wlj.com
Shelby N. Howlett (2019234)
SHowlett@wlj.com
**WRIGHT, LINDSEY & JENNINGS LLP**
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
PH:     (501) 371-0808
FX:     (501) 376-9442

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of March 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.


*/s/ Scott Poynter*